UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| JAMES WATSON | CIVIL ACTION NO. 04-1313-A |
|---|---|
| -vs- | JUDGE DRELL |
| SNAP-ON TOOLS, INC. and ROBERT BROWNE | MAGISTRATE JUDGE KIRK |

R U L I N G

Before the Court are the following motions: (1) Defendant, Snap-on Tools Company, LLC's Motion for Summary Judgment (Document No. 49); and (2) Defendant, Snap-on Tools Company, LLC's Motion to Strike "Affidavit" of Plaintiff's Expert (Document No. 54). Plaintiff has filed memoranda in response to both motions, and the Court finds no need for oral argument. For the reasons that follow, Defendant's Motion to Strike is GRANTED IN PART AND DENIED IN PART, and Defendant's Motion for Summary Judgment is DENIED.

BACKGROUND

On May 20, 2004, James Watson filed a Petition for Damages and instituted Civil Suit Number 16,574 on the docket of the 35th Judicial District Court, Grant Parish, Louisiana. Made defendants were Snap-on Tools Company, LLC (Snap-on Tools) and Robert Browne. (Document No. 1.) The matter was removed to this

Court on June 21, 2004 based on an assertion of diversity jurisdiction. By Judgment dated February 28, 2005, all claims against Robert Browne, a Louisiana resident, were dismissed, and Plaintiff's Motion to Remand was denied. (Document 24.) The Louisiana Workers' Compensation Corporation filed its Complaint of Intervention on November 4, 2004. (Document No. 20.)

In his Petition, Mr. Watson alleges that on May 23, 2003 he was employed by JKK Machine Shop in Alexandria, Louisiana. On that date, Plaintiff was securing component parts on an engine, and he was using a ¾ inch torque wrench that was equipped with a ¾ inch to ½ inch socket adaptor manufactured by Snap-on Tools. Mr. Watson contends the adaptor broke during use, and that his resulting fall to the ground caused him to sustain personal injuries.

## DEFENDANT'S MOTION TO STRIKE

Defendant seeks to strike the portions of Dr. Shelton's November 28, 2005 Affidavit that are outside the scope of the timely exchanged expert reports and/or that contradict Dr. Shelton's earlier deposition testimony. Additionally, Snap-on Tools asks that Dr. Shelton be prohibited from testifying at trial about the "new opinions" it contends are set forth in the Affidavit. (Document No. 54.)

In response, Plaintiff argues the Affidavit validly places Dr. Shelton's previously-expressed opinions in a form appropriate for opposing Defendant's Motion for Summary Judgment. (Document No. 62.)

2

Fed. R. Civ. P. 26(a)(2)(B) requires timely disclosure "of all [expert] opinions to be expressed and the basis and reasons therefor . . . ." Information not properly disclosed under Rule 26(a) may be excluded from evidence "at a trial, at a hearing, or on a motion . . ." unless the failure to disclose such information is "harmless." [Fed. R. Civ. P. 37(c)(1).]

Dr. Shelton's reports show he did not examine or test any identical adaptors. (Document No. 53, Exhibits "A-2" and "A-3.") However, in Paragraphs 13, 17, and 18 of his November 2005 Affidavit, Dr. Shelton compares the subject adaptor to "otherwise identical adaptors." If, indeed, Dr. Shelton conducted additional testing on other adaptors, his previous reports should have been supplemented to include this information, as required by Fed. R. Civ. P. 26(e)(1). As is discussed in more detail below, La. R.S. 9:2800.55 includes in its definition of an "unreasonably dangerous" product one that deviates from "otherwise identical products." Thus, the lack of timely disclosure regarding any "identical product" testing performed by Dr. Shelton is not harmless, because it would tend to prejudice Defendant's presentation of its Motion for Summary Judgment.

Defendant's other objections to Dr. Shelton's Affidavit are encompassed within the analysis this Court will conduct regarding Defendant's pending motion to exclude Dr. Shelton's testimony at trial. (Document No. 67.)

For these reasons, Defendant's Motion to Strike "Affidavit" of Plaintiff's Expert (Document No. 54) is GRANTED IN PART AND DENIED IN PART.

3

Specifically, Dr. Shelton's references to and/or opinions concerning "identical adaptors" as set forth in Paragraphs 13, 17, and 18 of the November 28, 2005 Affidavit are STRICKEN for purposes of the pending Motion for Summary Judgment.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the nonmoving party, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party must initially show "there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party need only point out this absence; it "need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Allegations in the pleadings, naked assertions of factual disputes, and conclusory allegations are not sufficient. *See* Fontenot v. Upjohn Co., 780 F.2d 1190, 1195-96 (5th Cir. 1996); Solo Serve Corp. v. Westowne Assoc., 929 F.2d 160, 164 (5th Cir. 1991); and Herrera v. Millsap, 862 F.2d 1157, 1160 (5th Cir. 1989). Following such a showing, the nonmoving party must come forward, after adequate time for discovery, with

4

"specific facts" establishing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e) and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Louisiana Law

Because this case is properly before the Court on the grounds of diversity jurisdiction under 28 U.S.C. § 1332, Louisiana's substantive law applies. *See* Hall v. GE Plastic Pacific PTE Ltd., 327 F.3d 391, 395 (5th Cir. 2003), *referencing*, Erie R. R. v. Tompkins, 304 U.S. 64. (1938). The applicable Louisiana law in the instant case is the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq.*

As the Fifth Circuit Court of Appeals has explained:

To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 260-61 (5th Cir. 2002).

Under La. R.S. 9:2800.54(B):

A product is unreasonably dangerous if and only if:

    (1)    The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;

    (2)    The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;

    (3)    The product is unreasonably dangerous because an adequate warning about the

> product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.

Design Defect and Inadequate Warning Claims

Among the claims Plaintiff initially outlined in his Petition were allegations the adaptor at issue was unreasonably dangerous within the meaning of the Louisiana Products Liability Act as a result of faulty design and an inadequate warning. (Document No. 1.) However, in response to Defendant's Motion for Summary Judgment and in the Pretrial Stipulations, Plaintiff has abandoned these theories of recovery. (Document Nos. 53 and 64.)

Unreasonably Dangerous in Construction or Composition

La. R.S. 9:2800.55 explains:

> A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

There is no dispute that the "product" at issue in the case at bar is a Snap-on Model No. GLA62 ¾ inch to ½ inch socket adaptor manufactured in 2001. The parties also agree on the following facts: (1) the "adaptor has a ¾ inch internal square drive on one end and a ½ inch external square drive on the opposite end"; (2) a "hole in the ½ inch square drive stud for housing the spring end ball is

machined into the solid steel square by a drilling operation"; (3) the "adaptor is assembled by placing the spring and ball into the hole that has been pre-drilled and is held in place inside the ½ inch square drive stud as a result of an embossing operation which deforms the outer edge of the hole"; (4) the process of embossing "forces the metal downward and inward in order to create an inner lip, slightly smaller in diameter than the hole"; and (5) Defendant "does not have any manufacturing specifications for microscopic tears or laps which are created as a result of the embossing operation." (Document No. 64.) The parties also concur that the American National Standard addressing performance of the subject adaptor was ASME B107.10M-1996, which required the adaptor to withstand torque of 4,500 in. lb., an amount exceeding the torque being applied by Mr. Watson at the time of the accident. (*See* Document No. 49, Exhibits "A" and "E," and Document No. 53, Exhibit "A.") The parties strenuously disagree, however, about why the adaptor ultimately broke apart.

In support of its Motion for Summary Judgment, Snap-on Tools refers to the expert reports of Gene Olson, P.E. (a mechanical engineer previously employed by Snap-on Tools), who performed tests and issued an opinion regarding the cause of the adaptor's failure, and Larry H. Burck, Ph.D., P.E., who examined the adaptor and prepared a metallurgical failure analysis. (Document No. 49, Exhibits "A," and "B," respectively.) Among other things, Mr. Olson concluded the adaptor fractured secondary to misuse that occurred after the adaptor left the

7

control of Snap-on Tools. In support of this position, he pointed to his understanding that there was testimony the adaptor had been improperly used on "at least a few pipe plugs." Mr. Olson further noted he found evidence of "misuse" in the form of one or more dents on the adaptor that he did not believe would have appeared during normal use. Mr. Olson also explained that the microscopic cracks identified by Plaintiff's expert were a normal part of Snap-on's manufacturing process. Likewise, Dr. Burck opined the adaptor failed because it was first cracked during improper use, the crack then propagated over time until the adaptor eventually failed, and the adaptor had no manufacturing defects.

Also attached to Defendant's Motion for Summary Judgment is the August 3, 2005 report supplementing the metallurgical failure analysis previously prepared for Plaintiff's counsel by Thomas C. Shelton, Ph.D., P.E. (Exhibit "D.") While Dr. Shelton agreed with Dr. Burck that an initial crack in the adaptor eventually, through fatigue, caused the failure on the day of the accident, Dr. Shelton did not find evidence the adaptor was misused. Rather, Dr. Shelton opined that the initial crack began in an area of abnormally high stress concentration, such as the microscopic tears and deformed material he identified as defects created during the insertion of the spring ball during the manufacturing process.

Thus, this Court is presented with a classic "battle of the experts." As noted above, for purposes of analyzing the potential liability of a manufacturer,

a product is unreasonably dangerous in construction or composition , if, at the time the product left the manufacturer's control, "the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." (La. R.S. 9:2800.55.) Although the microscopic cracks identified by the experts are apparently not addressed by any particular product specification used by Snap-on Tools, all parties agree on the applicable ASME standard torque rating of 4,500 lb. in. Although the Louisiana Products Liability Act does not specifically define "performance standard," logic dictates that such an "American National Standard," as Mr. Olson describes the ASME rating (Document 49, Exhibit "A") is the type of "performance standard" contemplated by the LPLA in cases like this. Additionally, the use of the disjunctive word "or" in the statute, among the three choices, militates in favor of this reading. Defendant's suggested reading that "performance standard" refers to the Defendant's performance standard results in the inevitable conclusion that a manufacturer who has no written product specifications (as here) and no identifiable performance standards (as here) cannot be liable unless the product differs from the same manufacturer's other identical products. That just cannot be the legislature's intention.

Plaintiff's expert traces the origin of the initial crack to the manufacturing process, while Defendant's expert opines the initial crack began when the

adaptor was improperly used by the buyer. Thus, a genuine issue of material fact exists regarding whether the subject adaptor was "unreasonably dangerous" under Louisiana law at the time it left the manufacturer's control. The Court will not take the case away from a jury under these circumstances.

Considering the above reasoning and conclusion, the Court has not considered Defendant's arguments concerning alternative theories of recovery.

Accordingly, Defendant's Motion for Summary Judgment (Document No. 49) is DENIED.

## CONCLUSION

For these reasons, Defendant, Snap-on Tools Company, LLC's Motion to Strike "Affidavit" of Plaintiff's Expert (Document No. 54) is GRANTED IN PART AND DENIED IN PART. Specifically, Dr. Shelton's references to and/or opinions concerning "identical adaptors" as set forth in Paragraphs 13, 17, and 18 of the November 28, 2005 Affidavit are STRICKEN for purposes of the pending Motion for Summary Judgment. Additionally, Defendant, Snap-on Tools Company, LLC's Motion for Summary Judgment (Document No. 49) is DENIED.

SIGNED on this 24th day of May, 2006, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge